UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

STEVEN SANDS,

Plaintiff,

-against-

CITY OF NEW YORK, LIEUTENANT JAY
FAGAN and LIEUTENANT EUGENE WHYTE,

Defendants.

-------------------------------------------------------------X

**JUDGE CARTER**

**06 CV 9431**

Case No. 06 CIV

**COMPLAINT AND
DEMAND FOR
TRIAL BY JURY**



RECEIVED
OCT 1 6 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## INTRODUCTORY STATEMENT

1.    Plaintiff Steven Sands ("plaintiff" or "Sands"), an established press photographer, brings this action under 42 U.S.C. § 1983 seeking injunctive relief, declaratory relief, compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988 for the Defendants' violation of his rights afforded by the United States Constitution.

2.    Defendants, in blatant violation of plaintiff's First Amendment rights of freedom of speech and the press, have systematically harassed and prevented him from taking photographs at traditional public fora such as the city sidewalk.

3.    On January 21, 2006, in a final act of interference and retaliation, defendants arrested plaintiff, issued him a bogus summons for disorderly conduct and confiscated his press identification card solely because he was attempting to take photographs from a pedestrian sidewalk in the vicinity of Central Park West and 72nd Street in Manhattan.

4.    Plaintiff seeks the immediate return and renewal of his press card (or a procedurally fair hearing), a declaration that his constitutional rights were violated and

money damages.

## JURISDICTION

5.     The Court has jurisdiction over plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(3).

## PARTIES

6.     The plaintiff is a resident of the City of New York, County of New York and State of New York.

7.     Defendant City of New York is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and as such is responsible for the practices, policies, and customs of the New York City Police Department (the "NYPD"), as well as the hiring, screening, training, supervising, controlling and disciplining of those persons employed by the New York City Police Department.  In addition, at all relevant times, defendant City of New York was responsible for enforcing the rules of the New York City Police Department, and for ensuring that police personnel obey the laws of the United States and the State of New York.

8.     The NYPD consists of many divisions, one of which is the Public Information Division.  The NYPD Public Information Division is run by Deputy Commissioner Paul Browne and was set up to insure that film and television companies and members of the print media can cover newsworthy events without interference.  The NYPD Public Information Division also reviews applications from members of the  press and issues press cards and

2

press vehicle cards.

9.      Defendants Lieutenants Fagan and Whyte, sued herein in their individual and official capacities, are currently and were, at all times hereafter mentioned, employed by the City of New York and assigned to the Public Information Division.  Defendant Fagan was the commanding officer or head of the police department's television and movie unit and, as pertaining to these issues, was a policy maker under 42 U.S.C. Sec. 1983.  On or about August 12, 2006, defendant Fagan was transferred to the 78th Precinct after Internal Affairs Investigators charged him with padding his 2005 time records with phony overtime, running personal errands and shopping while on duty.

10.      All defendants, either personally or by and through their employees, were at all times material to this incident, acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or the City of New York, and defendant City of New York's employees were also acting within the scope of and in furtherance of their employment.

11.      At all times material to this complaint, the defendants acted jointly and in concert with each other.  Each defendant had the opportunity and the duty to protect the plaintiff from the unlawful actions of the other defendants but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

## FACTUAL ALLEGATIONS

12.      Sands has worked as a press photographer for over twenty-five years.  His

3

particular niche in the industry is to take photographs of film stars, athletes, politicians and other public figures when they appear in public.

13.    Sands works throughout the City of New York and is an exclusive supplier for the New York Post.

14.    Like all press photographers working in the City, Sands requires a valid press card, photographic equipment, an operable vehicle and New York Press license plates to effectively do his job.

15.    Press Cards are distributed by defendant City of New York, through its Public Information Division. Written applications are submitted for review and either approved or disapproved by the Deputy Commissioner of the Public Information Division.

16.    When working, Sands always carries his press card so he can gain access to various locations where newsworthy events are taking place. He has had a valid press card in his name for most of the past twenty-five years.

17.    New York Press License Plates are obtained by applying to the New York State Department of Motor Vehicles (the "DMV"). Holders and applicants for these license plates who work in New York City, like Sands, must provide a copy of their NYPD press card in order to obtain these special press license plates. Vehicles with these license plates may be parked in many areas throughout the city and state where other vehicles cannot.

18.    The DMV will not issue press license plates to an individual working in New York City unless he/she possesses and provides it with a copy of their NYPD press card.

4

19.     During all of the relevant times complained of herein, except where noted, Sands had New York Press License Plates that he attached to the vehicle that he drove to and from newsworthy events.  He has had press license plates for most of the past twenty-five years.

20.     Sands' New York Press License Plates expired on or about July 31, 2006.  He is unable to seek renewal or obtain a new press license plate because he does not possess a valid press card.

21.     Sands, as well as other press photographers, has been threatened, intimidated and harassed while in the public areas of the City of New York attempting to do his job.

22.     This harassment is systemic and consists of arresting and issuing summonses to members of the media, ticketing media representatives' vehicles (despite the presence of press license plates), confiscating press cards, blocking cameras or photographers' lines of sight, hassling media representatives when they seek renewal of their press cards and deferring to the unconstitutional whims of private entertainment people in exchange for access, food and party invitations.

23.  In or around 2003, defendant Fagan took over as the Commanding Officer of the Television and Movie Unit, which is a division within the Public Information Division.

24.     Defendant Fagan was a policy maker in that he created, implemented and insured that the policies, practices and procedures in place were followed by subordinate officers.

5

25.    As a policy maker, Fagan was directly involved in the above mentioned harassment and the defendants' failure to follow the particular rules regarding police officers' relations with the media as set forth in the NYPD (the "Patrol Guide").

26.    The Patrol Guide, Section 212-49, states that the purpose of the rules contained therein are to   help facilitate police cooperation with media representatives "by not interfering or allowing others to interfere with media personnel acting in their news gathering capacity."

27.    Section 212-49 of the Patrol Guide further states that, "Members of the service will not interfere with the video taping or photographing of incidents in public places. Intentional interference such as blocking or obstructing cameras or hassling the photographer constitutes censorship."

28.    The defendants have created, implemented and perpetuated a policy, practice and procedure where press photographers are harassed and the Patrol Guide is ignored in violation of the photographers' constitutional rights under the First Amendment.

29.    Sands, and other press photographers, have a First Amendment right of equal access to cover the news, whether it is considered serious or entertainment-related.

30.    Some, but not all, of the specific incidents where Fagan and/or his subordinates harassed, threatened, and prevented Sands (and other press photographers) from taking photographs in public areas in violation of his First Amendment rights were:

a)   On or about March 18, 2003, Fagan set up a "work area" in the DUMBO

6

section of Brooklyn to prevent Sands and other photographers from taking photographs of a TV shoot, threatened them with arrest, used physical force and, later in the day, pushed them from a public area on the Brooklyn Bridge despite it being open to the public;

b)   On or about March 27, 2003, at the same TV shoot in Brooklyn, Fagan ordered Sands and others to shut off their video cameras and physically prevented them from shooting film;

c)   On or about October 11, 2004, Fagan ordered a subordinate to remove Sands from a public area on 25th Street and Broadway in Manhattan where Sands was videotaping a celebrity event, and then Fagan himself physically dragged Sands across the street. After Sands protested, Fagan ordered another subordinate, police officer Livingston, to arrest Sands. After four hours in custody and at least two court appearances, all charges against Sands were dismissed;

d)    On or about September 11, 2005, Sands' press card was temporarily confiscated by a police officer while plaintiff was covering another celebrity event; and,

e)   Finally, on or about January 21, 2006, while covering the filming of the movie, "Chapter 27, " a move about Mark David Chapman, the man convicted of killing the former Beatle, John Lennon, Sands was denied access to the public pedestrian area to shoot photographs, escorted away by various subordinate police officers and arrested and issued a summons for disorderly conduct pursuant to Fagan's orders. Thereafter, defendant Whyte confiscated Sands' press card and, to date, has refused to return it. In April 2006, a judge in

7

New York City Criminal Court conditionally dismissed the disorderly conduct charge pending against Sands.

31.    On January 21, 2006 and on many occasions thereafter, Sands attempted to obtain the return of his press card.

32.    Sands regularly contacted the NYPD Public Information Division, exchanged emails with defendant Whyte, communicated with Deputy Mayor Edward Skyler, gained the assistance of his editor at the New York Post and retained counsel who sent a letter to the Deputy Commissioner of the Public Information Division, Paul Browne, to obtain the return of his press card.

33.    Nearly nine months have elapsed and the defendants continue to refuse to return Sands' press card to him.

34.    Because plaintiff's press card expired on or about March 31, 2006, he has applied for a renewal card. Although plaintiff has diligently followed up on that application, defendants have failed and/or refused to act on it.

35.    Without his press card, Sands is unable to gain access to many areas to take photographs and to obtain a renewal New York Press License Plate from the DMV.

36.    Solely as a result of defendants' unconstitutional actions, Sands has suffered damages in the form of lost income, pain and suffering and punitive damages.

### FIRST CAUSE OF ACTION
(First Amendment against Defendants Fagan and Whyte)

37.  Plaintiff repeats and realleges each and every allegation set forth above with the

8

same force and effect as if set forth herein.

38.    It is a violation of the First Amendment of the United States Constitution to abridge or curtail a citizen's right to free speech or a free press.

39.    As a direct and proximate result of defendants' actions, Sands was deprived of rights, privileges and immunities secured to him under the constitution and the laws of the United States, including, but not limited to, his rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

40.    Defendants Fagan and Whyte violated the First Amendment rights of Sands by threatening, intimidating and harassing him while he took, and attempted to take, photographs in public areas throughout the City of New York.

41.    Defendant Fagan (at times by ordering a subordinate) and Defendant Whyte further violated the First Amendment rights of Sands and prevented him from taking photographs by assaulting him, arresting him and confiscating his press card.

42.    Defendants Fagan and Whyte acted with malice or with reckless disregard for whether Sands's rights would be violated by their actions.

43.    Defendants Fagan and Whyte failed to follow and completely ignored the NYPD's rules and regulations as laid out in the Patrol Guide including, but not limited to, Section 212-49.

44.    Defendants Fagan and Whyte's violation of Sands's rights caused Sands to suffer lost income, lost business opportunities and great pain and emotional suffering.

9

45.    Sands seeks compensatory and punitive damages from defendants Fagan and Whyte in an amount to be determined by a jury.

## SECOND CAUSE OF ACTION
(First Amendment against the City of New York - *Monell* Liability)

46.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

47.    At all times relevant herein, defendant City of New York, by and through its policy maker defendant Fagan and others, developed and maintained a policy or practice to limit the First Amendment rights of media representatives, particularly press photographers, to shoot video or still photographs in the public areas of the city.

48.    This policy or practice was effectuated by systematically harassing such press photographers, such as Sands, by arresting and issuing them summonses, ticketing their vehicles, confiscating their press cards, blocking their cameras or line of sight, hassling them when they seek renewal of their press cards and deferring to the unconstitutional whims of private entertainment people in exchange for access, food and party invitations.

49.    Defendants perpetuate this unconstitutional policy or practice by completely ignoring the NYPD Patrol Guide, defendant's own internal rules and regulations for the NYPD.

50.    As detailed above, Sands has been wrongly arrested, physically assaulted, removed from a public area and had his press card confiscated on several occasions.

51.    Defendant City of New York knew, or in the exercise of reasonable care, should

10

have known, that the Public Information Division had engaged in a pattern and practice of thwarting the First Amendment rights of members of the media, particularly press photographers.

52. Despite knowledge of the aforesaid pattern and practice of illegality, defendant City of New York failed to properly investigate these instances of illegality, and to supervise, train and discipline NYPD officers.

53. As a direct and proximate result of the acts and omissions of the defendant City of New York, Sands suffered lost income, lost business opportunities and great pain and emotional suffering in violation of 42 U.S.C. Section 1983 and seeks compensatory damages against the City of New York in an amount to be determined by a jury.

54. As a direct and proximate result of the unconstitutional acts described above, Sands has been irreparably harmed and injured.

### THIRD CAUSE OF ACTION
(False Arrest and Malicious Prosecution against Defendant Fagan)

55. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

56. On or about October 11, 2004 and January 21, 2006, defendant Fagan ordered subordinate police officers to arrest, charge and prosecute Sands with disorderly conduct despite the fact that Sands had not engaged in any criminal conduct and/or any behavior that could be considered "disorderly" under the law.

57. Upon information and belief, the above charges against Sands were dis-

11

missed on the merits and in Sands' favor.

58.   As a direct and proximate result of defendant Fagan's actions, Sands was deprived of rights, privileges and immunities secured to him under the constitution and the laws of the United States, including, but not limited to, his rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be: 1) secure in his person; 2) free from false arrest; and, 3) free from malicious prosecution and punishment without due process.

59.   Defendant Fagan acted with malice or with reckless disregard for whether Sands' rights would be violated by his actions.

60.   As a result of the aforesaid violation of Sands' rights, he sustained grievous personal injuries to mind and body, lost income and professional opportunities, sustained great pain and emotional suffering and was deprived of his liberty and made ill.

61.   Sands seeks compensatory and punitive damages from defendant Fagan in an amount to be determined by a jury.

## FOURTH CAUSE OF ACTION
(Procedural Due Process Violation)

62.   Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

63.   Defendant Whyte's January 21, 2006 confiscation of Sands' press card constitutes a violation of Sands' rights as guaranteed pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

64.   Said confiscation was random and unauthorized and deprived Sands of a

12

property interest in his press card and a liberty interest in his ability to pursue his chosen

occupation as a press photographer.

65.    Defendant Whyte's actions were wanton and intentional and could not have

been remedied by any pre-deprivation procedures adopted by defendant City of New

York.

66.    In fact, prior to defendants' taking of Sands' press card on January 21, 2006,

they did not provide him with any notice or an opportunity to be heard.

67.    To date, the defendants have failed to provide Sands with an explanation for

their failure to return his press card and an opportunity to be heard.

68.    As a result of defendants' actions and failure to act, Sands' procedural due

process rights  have been violated and he has suffered damages.

### FIFTH CAUSE OF ACTION
(Demand for a Preliminary and Permanent Injunction)

69.    Plaintiff repeats and realleges each and every allegation set forth above with

the same force and effect as if set forth herein.

70.    Defendants' policy, custom and practice of abridging the constitutional

rights of Sands and other press photographers is clearly unconstitutional in that it is in

violation of the First Amendment of the United States Constitution.

71.    Solely as a result of defendants' actions, Sands has been irreparably harmed

in that his constitutional rights have been violated and his ability to practice his chosen

profession as a press photographer has been severely undermined because defendants

13

refuse to return his press card and/or approve his renewal application.

72.   Without his press card, Sands is unable to gain access to many newsworthy areas and, because he works in New York City, to obtain a New York Press License Plate from the DMV.

73.   Without a New York Press License Plate, Sands is unable to transport his photographic equipment and travel to and park at particular locations where newsworthy events are taking place.

74.   Sands has done all that is possible to obtain the return of his press card to no avail.

75.   Sands seeks both a preliminary and permanent injunction enjoining the defendants from retaining the press card that was unlawfully confiscated by defendant Whyte on or about January 21, 2006 and requiring them to return it to him and/or approve his renewal application.

## JURY DEMAND

76.   The plaintiff respectfully demands that this proceeding be tried by a jury.

## CONCLUSION

WHEREFORE, plaintiff prays for the following relief:

1)   For a declaratory judgment under 28 U.S.C. Sec. 2201 declaring that the defendants, separately and in concert, violated the plaintiff's constitutional rights; and

14

2)    For a preliminary and permanent injunction enjoining the defendants from

retaining the press card that was unlawfully confiscated by defendant Whyte

on or about January 21, 2006 and requiring them to return it to Sands and/or

approving his renewal application; or, in the alternative, promptly holding a

hearing on the confiscation of the press card and plaintiff's renewal applica-

tion.

3)    For compensatory damages against all defendants; and

4)    For punitive damages against the individual defendants; and

5)    For attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

6)    For such other relief as is just and proper.

DATED:    New York, New York
          October 13, 2006

                          Respectfully submitted,

                          BERANBAUM MENKEN
                          BEN-ASHER & BIERMAN LLP


          By:    Bruce E. Menken (BEM 1140)
                 Attorneys for Plaintiff
                 80 Pine Street, 32nd Floor
                 New York, New York 10005
                 Tel. (212) 509-1616

15